UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JESSIE JR. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:18-CV-151-HBG |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 19]. Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23]. Jessie Jr. Davis ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On January 13, 2015, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging disability beginning on April 30, 2014. [Tr. 18]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 112–13]. A hearing was held on February 21, 2017. [Tr.

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

40–57]. On May 12, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 18–34]. The Appeals Council denied Plaintiff's request for review on February 14, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on April 13, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since April 30, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease, obesity, enucleation of the right eye, diabetes mellitus, depression, anxiety and borderline intellectual functioning (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can lift, carry, push, and pull 35 pounds occasionally and 20 pounds frequently. He can sit, stand and walk six hours each in an eight-hour workday. The claimant can only occasionally engage in postural activities and cannot climb ladders, ropes and scaffolds or have exposure to hazards. The claimant is limited to tasks that can be done with monocular vision. He can also perform simple, routine tasks with occasional contact with the public, coworkers, and supervisors. The claimant can sustain infrequent and gradual changes in routine work

settings and make simple work related judgments.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 6, 1962 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2014, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 20–34].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

### V. ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence,

as he challenges the ALJ's stated reasons for the weight assigned to the opinion of consultative examiner, Stephen Goewey, M.D. [Doc. 21 at 7–11].[2] Plaintiff contends that the ALJ improperly "failed to afford appropriate weight to the only examining medical opinion in the record," and that the ALJ should have credited Dr. Goewey's opinion over those of the nonexamining state agency consultants. [*Id.* at 7]. The Commissioner asserts that the ALJ properly considered Dr. Goewey's opinion while determining Plaintiff's RFC, and substantial evidence supports his reasons for discounting the opinion. [Doc. 23 at 7–12].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. § 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). In fact, opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

---

[2] Although Plaintiff states that "[t]he ALJ's reasons for discounting Dr. Ingram's opinion fail[ ] to comport with the regulations and is [sic] in error" [Doc. 21 at 8], Plaintiff proceeds to assert how the ALJ improperly discounted Dr. Goewey's opinion.

6

Dr. Goewey consultatively examined Plaintiff on March 23, 2015. [Tr. 421]. Dr. Goewey reviewed Plaintiff's medical history and treatment, and noted that Plaintiff indicated a history of deteriorating spinal conditions after a horse fell on him approximately 25 years ago. [*Id.*]. Upon examination, Plaintiff's back flexion was to 70 degrees, extension to 25 degrees, and bended to 25 degrees. [Tr. 423]. Plaintiff's straight leg raise test was not positive, and bilateral lumbar paraspinous tenderness was noted in the left greater than the right without swelling, skin changes, or bony deformities appreciated. [*Id.*]. Plaintiff's hip range of motion was found to be 90 degrees on the left, but otherwise intact, and generalized knee tenderness was noted. [*Id.*]. Further, Dr. Goewey noted that Plaintiff had intact range of motion of his ankles, as well as feet and toe evaluation, and his shoulders, elbows, forearms, wrists, and hands evaluation were intact. [*Id.*]. Lastly, Dr. Goewey indicated that his evaluation revealed left antalgic gait features, and Plaintiff's momentary completion of tandem walk, balancing, and squatting was to 30%. [Tr. 424].

Dr. Goewey assessed that Plaintiff suffered from partial blindness after a traumatic eye injury, lumbago without radiculopathy, bilateral knee pain with posttraumatic arthritis features, left greater than the right, diabetes mellitus—uncontrolled with peripheral neuropathy features, and negative carpal tunnel testing. [*Id.*]. Accordingly, Dr. Goewey opined that Plaintiff would be able to sit without restriction, stand and walk between two and three hours, and lift and carry up to twenty pounds occasionally. [*Id.*].

In the disability decision, the ALJ reviewed Dr. Goewey's opinion and noted his status as a consultative examiner. [Tr. 30]. However, the ALJ afforded little weight to the opinion based upon mild degenerative findings in Plaintiff's cervical and lumbar spine. [*Id.*]. Further, the ALJ noted that Plaintiff's back impairments and diabetes mellitus were treated conservatively with

7

medication, and although there were periods of lumbar tenderness, physical examinations revealed a normal range of motion in all extremities. [*Id.*].

Plaintiff challenges the ALJ's rationale that Dr. Goewey's opinion was not consistent with the medical record because Plaintiff displayed a normal range of motion in all extremities during physical examinations. Plaintiff claims that "[t]here is no relation between Dr. Goewey's opinion and Plaintiff[']s extremity range of motion." [Doc. 21 at 9].

The ALJ cited to normal examination findings from March 18, 2014, January 12, 2015, and March 17, 2015 visits with Plaintiff's treating physician, Dr. Hasmukh Kanabar [Tr. 343, 360, 507, 511]. The ALJ also cited to a November 8, 2016 visit with Todd Pepper, M.D. [Tr. 627]. Earlier in the disability decision, when discussing Plaintiff's low back pain and treatment with Dr. Kanabar, the ALJ detailed that "[f]rom January 12, 2015 through May 18, 2015, musculoskeletal examinations showed a normal range of motion in all extremities." [Tr. 26]. Further, when discussing Plaintiff's treatment notes with Dr. Pepper, the ALJ detailed that after reviewing a September 19, 2016 x-ray, "Dr. Pepper found no evidence of instability," and "[p]hysical examinations revealed a normal gait, normal motor function, normal tone in all extremities, 5/5 strength and normal range of motion." [Tr. 27]. However, the ALJ also noted that Dr. Pepper's treatment notes indicated some tenderness in Plaintiff's lumbar spine. [*Id.*].

The Court finds that the ALJ appropriately found that the assessed functional limitations in Dr. Goewey's opinion were inconsistent with the medical record, specifically Plaintiff's normal range of motion during musculoskeletal examinations. *See, e.g.*, *Shular v. Berryhill*, No. 3:17-CV-266-HBG, 2018 WL 3377332, at *4 (E.D. Tenn. July 11, 2018) (finding the ALJ's assignment of little weight to opinion of consultative examiner is supported by substantial evidence as "[t]he ALJ cited to Plaintiff's otherwise normal range of motion"); *Hinkle v. Berryhill*, No. 2:17-CV-54,

8

2018 WL 2437238, at *5 (E.D. Tenn. May 30, 2018) (holding the ALJ properly assigned little weight to a consultative examiner's opinion, as the ALJ detailed how the opinion was not consistent with the examination or medical record, as well as reviewed Plaintiff's subjective allegations); *Philpot v. Berryhill*, No. 1:17CV447, 2017 WL 6759417, at *15 (N.D. Ohio Dec. 7, 2017) (finding the ALJ properly evaluated opinion of consultative examiner, in part, due to finding the opinion was inconsistent with the claimant's "normal range of motion on examination"), *report and recommendation adopted sub nom.*, *Philpot v. Comm'r of Soc. Sec.,* No. 1:17-CV-447, 2017 WL 6731402 (N.D. Ohio Dec. 28, 2017). Moreover, Plaintiff's own interpretation of the evidence is insufficient to undermine the ALJ's finding. *See Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

Second, Plaintiff submits that substantial evidence does not support the ALJ's assignment of little weight to Dr. Goewey's opinion because "[t]he ALJ should have considered Plaintiff's financial situation before punishing him for using conservative treatments." [Doc. 21 at 9–10]. Social Security Ruling 96–7p provides that an ALJ "must not draw any inferences about an individual's symptoms . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," such as that an "individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96–7p, 1996 WL 374186, at *7–8 (July 2, 1996). Plaintiff cited to notations from Dr. Kanabar that Plaintiff could not afford to have sleep apnea testing performed due to financial constraints [Tr. 335], that he "cannot afford any workup for his problems" [Tr. 350], that "he has significant

9

financial constraints" [Tr. 355], as well as other treatment records noting his lack of a stable income [Tr. 384, 389, 416, 518, 536].

However, the ALJ assigned little weight to Dr. Goewey's opinion due to Plaintiff's conservative treatment history for his low back pain and diabetes. The ALJ noted that Plaintiff was advised to stretch, be physically active, and not rely on Prednisone. [Tr. 27]. After reviewing Plaintiff's treatment history, the ALJ described that "the claimant's low back pain [was] treated conservatively with medications." [*Id.*]. With respect to Plaintiff's diabetes mellitus, the ALJ noted that Dr. Kanabar prescribed Plaintiff Metformin and Amaryl, advised him to start an exercise program, and "[b]y September 2, 2015, the diabetes mellitus was stable with conservative treatment." [Tr. 27–28].

Other than recommended sleep apnea testing, Plaintiff fails to point to any treatment that he was unable to afford due to his financial constraints. *See Snell v. Comm'r of Soc. Sec.*, No. 14-13661, 2016 WL 8114213, at *6 (E.D. Mich. Apr. 29, 2016) ("While Plaintiff no doubt experienced some degree of financial restriction as a result of his work termination, the record shows that the lack of aggressive treatment was attributable to generally mild symptomology rather than financial constraints."), *report and recommendation adopted by*, 2016 WL 3049402 (E.D. Mich. May 31, 2016). Additionally, "there is no evidence that he ever sought treatment offered to indigents or was denied medical treatment due to an inability to pay." *Moore v. Comm'r of Soc. Sec.*, No. 14-1123, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (citing *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) ("However, there is no evidence Goff was ever denied medical treatment due to financial reasons.")). Therefore, the ALJ properly considered Plaintiff's conservative course of treatment in discounting Dr. Goewey's opinion. *See, e.g., Lester v. Soc.*

*Sec. Admin.,* 596 F. App'x 387, 389 (6th Cir. 2015) (finding the ALJ reasonably discounted a treating physician's opinion, in part, because the claimant was receiving conservative treatment).

Lastly, Plaintiff challenges the ALJ's assignment of some weight to the opinions of the nonexamining state agency consultants, as the "ALJ held exactly the same findings as the non-examining state agency medical consultants" regarding Plaintiff's ability to lift and carry, as well as stand and walk. [Doc. 21 at 10]. The nonexamining state agency consultants both found that Plaintiff could frequently lift and carry 25 pounds and 35 pounds occasionally, as well as stand and walk for about six hours out of an eight-hour workday. [Tr. 68–69, 89]. In the disability decision, the ALJ assigned "some weight" to their opinions due to their consistency with the medical record, objective evidence revealing mild degenerative findings in the cervical, thoracic and lumbar spines, Plaintiff's conservative treatment for his back pain, and Plaintiff's reported activities of daily living. [Tr. 31].

However, "the ALJ is 'under no special obligation' to provide great detail as to why the opinions of the nonexamining providers 'were more consistent with the overall record' than the examining, but nontreating providers." *Jenkins v. Soc. Sec. Admin.*, No. 3:14-cv-1713, 2017 WL 2692624, at *9 (M.D. Tenn. June 21, 2017) (citing *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (explaining that opinions from one-time consultative examiners are not due any special degree of deference). "[A]n ALJ may credit the views of a nonexamining doctor over those of someone who has examined the claimant where the nonexaminer's opinion is better supported by the objective evidence and more consistent with the record as a whole." *Dixon v. Astrue*, No. 2:11-CV-148, 2012 WL 441194, at *4 (E.D. Tenn. Feb. 10, 2012) (citing *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006)). The opinions of the nonexamining state agency consultants were properly found to be

11

more consistent with the medical record, and the ALJ appropriately explained his decision in weighing the respective opinions. *See Norris*, 461 F. App'x at 440 ("While perhaps the ALJ could have provided greater detail, particularly as to why the nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of nontreating versus nonexamining sources.") (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).

The Court notes that although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), he is not bound to adopt any particular opinion when formulating a claimant's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'") (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ).

Ultimately, the ALJ's assignment of little weight to Dr. Goewey's opinion is supported by substantial evidence, as the ALJ properly considered the supportability of the opinion with the medical record and examination findings. *See Norris*, 461 F. App'x at 469 (holding a consultative examiner's opinion "may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record"); *see also* 20 C.F.R. § 404.1527(c) (directing that an ALJ evaluates a non-treating source opinion by considering the

supportability of the opinion). In the disability decision, the ALJ found that Dr. Goewey's opinion was entitled to little weight because it was inconsistent with Plaintiff's conservative treatment for his back and diabetes, mild degenerative findings in the cervical and lumbar spine, and normal range of motion in all extremities. [Tr. 30]. The Court finds that the ALJ's decision that Dr. Goewey's opinion was not consistent with the medical record is within the ALJ's "zone of choice." *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (noting the substantial evidence standard allows considerable latitude to ALJ's because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference") (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). Accordingly, Plaintiff's assignments of error do not constitute a basis for remand.

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 20**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge

13